UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL SUBENKO                          CIVIL ACTION NO
        PETITIONER                       1.04.10023 GAO

V

COMMONWEALH
        RESPONDENT                       PETITIONER S
                                         APPLICATION
                                         FOR CERTIFACTE OF
                                         APPEALABILTY


                PETITIONER'S MEMORANDUM OF LAW.
In PETITIONER'S MEMORANDUM PETITIONER INTENDS TO SHOW THAT I AM A
COMPLAINANT WHO HAS BEEN INDUCED OR TRICKED BY MY ADVERSARY S
MISCONDUCT INTO ALLOWING THE FILING DEADLINE TO PASS IRWIN V.DEPT
OF VETERANS AFFAIRS,498 U.S.89,96,111.S.CT.453,112L.ED.2d 435
1990.PETITIONER RELYS ON A LETTER FROM APPELLANT COUNSEL
INFORMING ME THAT AFTER THE STATE SURPREME JUDICAL COURT DENIED
MY APPLICATION FOR F.A.R.THERE WAS NO OTHER COURT TO APPEAL MY
CASE.IT WAS,NT UNTIL THE MIDDLE OF DECEMBER 2003 THAT I LEARNED
THAT THERE WERE OTHER COURTS TO APPEAL MY CASE ,SUCH AS U.S.D.C.
MY APPELANT COUNSEL KNEW I ONLY HAD AN 8thGRADE EDUCATION AND WAS
ONLY 18yrs OLD AND IN A SERIOUS CAR ACCIDENT SO SHE TOOK ADVANTAGE
OF MY SITUATION,BY SAYING I WAIVED THE THE IN PERSON MEETING
WHICH I NEVER DID WAIVE,WE NEVER MET AND NEVER WENT OVER MY CASE
IN PERSON.I ALSO SENT HER NUMEROUS LETTERS ADDRESSING MY CONCERNS
OF MY CASE AND SHE COMPLETELY DISREGARDED THEM,BY RESPONDING THAT
I WAS DISAPPOINTED MY BRIEF WAS FILED AND SHE APPRECIATES MY
INPUT BUT MY BRIEF WAS FILED.SHE KNEW ALL ALONG THAT MY POSISTION
ON MY CASE WAS INEFFECTIVE COUNSEL FOR FAILING TO HIRE AN EXPERT
TO PROVE MY INNOCENCE AS FAR AS HOW THE CAR ACCIDENT HAPPENED,
WHICH SCIENTIFIC EVIDENCE WOULD VE PROVED THAT THAT THE WAY THE
STATE TROOPER SAID IT HAPPENED WAS JUST NOT TRUE.THE ENCLOSED
TRIAL TRANSCRIPT REVEALS THAT WITH A SIMPLE CURIOUS READ,SAYS IF
YOUR HONOR WILL READ BETWEEN LINE I WOULD LOVE TO HAVE MY EXPERT
EXCEPT RESOURCES ARE AN ISSUE.INSTEAD OF RAISING THAT ISSUE,SHE
RAISE S A ISSUE SAYING THAT THE COURT ERRED IN INSTRUCTING THE
JURY ON THE MANSLAUGHTER INSTRUCTION,WHICH THE DECISION THE
APPEALS COURT MADE I VE ENCLOSED,WHICH STATE S THAT ARGUEMENT WAS
PLAINLY NOT SO.IT SAY S IN JONES.V.BARNES 463 U.S 745,751 52,103
S.CT 3308,77 L.ED.2d 987.1983.APPELLANT COUNSELS ARE EXPECTED TO
CULL FROM THE MANY NON FRIVOLOUS ARGUEMENTS AND ADVOCATE ONLY
THOSE.SMITH.V.ROBBINS,528 U.S.259,288,120 S.CT.746,145 L.ED.2d
756 2000.SAY S THAT THE IGNORED ISSUE S WERE CLEARLY STRONGER
THAN THOSE ADVANCED.MY APPELLANT COUNSEL HAD SERIOUS HEALTH
CONCERNS THAT WAS NOTED BY THE APPEALS COURT.WHETHER THAT PLAYED
A ROLE IN MY APELLANTS DECISION MAKEING,I ASK THE COURT TO
consider,whether given my situation,is there extraordinary
CIRCUMSTANCES AT HAND SUCH AS DELANEY,264 F.3d at 14 OR CADA.V
BAXTER HEALTHCARE CORP.920 F.2d 446,451,7th Cir.1990.DUE TO THE
FACT THAT MY APELLANT COUNSEL HAD SUCH A CASUAL RELATIONSHIP
WITH NOT HAVING TO SEE ME AND KNOWING I WAS AT A COMPLETE
DISADVANTAGE,FROM BEING IN SERIOUS CAR ACCIDENT AND IT S OUTCOME,

THAT WITH THE EXTREME UPHILL SEASAW BATTLE I FACE WITH THE
COMPLEXITY OF THE LEGAL SYSTEM AND THE COMPLEXITY OF MY CASE.

MY LAST POINT IS NO MATTER WHAT INPUT OR INFORMATION I GAVE TO
MY APELLANT COUNSEL OR TRIAL COUNSEL, I WAS TOLD THAT THERE THE
ONE S WHO WENT TO COLLEGE FOR 10yrs AND I DID NT.SO WHATEVER I
HAD TO SAY WAS BASICLY WRONG AND THEY WERE RIGHT.MY ENTIRE LEGAL
SITUATION WAS COMPLETELY OUT OF MY HANDS.I VE SUBMITTED
AFFIDAVIT S TO VARIFY THIS.I ALSO RELY ON A LETTER FROM MY
APPELLANT COUNSEL CONFIRMING THAT I ASKED HER TO FILE INEFFECTIVE
COUNSEL ALONG WITH VARIOUS OTHER ISSUE S.YET SHE CONTRADICTS
herself saying in another letter I DID NO RESEARCH OR WRITING.
THE CAR ACCIDENT HAD SUCH A TRAUMATIC EFFECT ON ME THAT BETWEEN
THAT DWELLING IN MY HEAD CONSTANTLY AND MY LAWYER FLIP FLOPPING
ARE CORRESPONENCE AND HOW THE PROCEDURE S OF LAW WORK,IT MADE
EVERYTHING I WAS READING TO LEARN ABOUT MY CASE 100 TIME S
HARDER,PLUS MY LACK OF EDUCATION DID NT HELP.I VE SPENT YEARS
TRYING TO DISCOVER AND LEARN WHAT ROLE I ACTUALLY HAD IN MY CASE
AND FINNALLY BY CONSTANTLY USEING DUE DILIGENCE TO THE BEST OF
MY ABILITY I WAS ABLE TO FIND OUT IN THE MIDDLE OF DECEMBER 2003
THE DEFICIENCIES IN MY APELLANT,COUNSEL,AND THATS WHEN I STARTED
THE PROCESS OF BRINGING MY SITUATION TO U.S.D.C.MONTENEGRO 248
3d at 592,WIMS,225 F.3d at 190 91 citing EASTERWOOD V. CHAMPION
.213 F.3d 1321.1323 10th CIR 2000.AND ALSO 291 F.3d 708. ARON V.
U.S.C.A.11 FLA.2002.

THEREFOR FOR THE REASON S STATED IN PETITIONERS MEMORANDUM,
PETITIONER PRAY S THAT THE HONERABLE JUDGE IN THIS MATTER
GRANTS A CERTIFICATE OF APPEALABILTY.

RESPECTFULLY SUBMITTED,

*Michael Subenko*
MICHAEL SUBENKO

MICHAEL SUBENKO W65867
petitioner
S.B.C.C P.O BOX 8000
SHIRLY MA,01464

DATED FEBUARY 12,2005

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 A2
I MICHAEL SUBENKO, HEREBY CERTIFY THAT I HAVE BEEN UNABLE TO
CONFER WITH THE RESPONDENT,AND IS NOT FREE TO ACCECT OR MAKE
TELEPHONE CALLS DURING NORMAL BUISNESS HOURS.IT IS BELIEVED IN
ANY EVENT,THAT THE RESPONDENT WOULD NOT VOLUNTARILY ASSENT TO
ANY PORTION OF THE SUBJECT MOTION.

—                                     MICHAEL SUBENKO

CERTIFICATE OF SERVICE
I HEREBY CERTIFY ON FEBUARY 12,2005,I CAUSED A COPY OF THE
ABOVE DOCUMENT TO BE SERVED BY FIRST CLASS MAIL POSTAGE PRE PAID
UPON THE RESPONDENT DANIEL I.SMULOW,ASSISTANT ATTORNEY GENERAL
BBO#641668,CRIMANAL BUREAU ONE ASHBURTON PLACE,BOSTON MA,02108

MICHAEL SUBENKO

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

CRIMINAL NO. <u>98760</u>

C O M M O N W E A L T H

v.

M I C H A E L    S U B E N K O

---

AFFIDAVIT OF BEVERLY SUBENKO
<u>IN SUPPORT OF DEFENDANT'S MOTION FOR NEW TRIAL</u>

I, Beverly Subenko, hereby depose and state the following facts in support of defendant's motion for a new trial:

1.     I am the mother of the defendant, Michael Subenko and freely provide the following information.

2.     On October 10, 1996 my son Michael Subenko ("Defendant") was involved in a serious motor vehicle accident which caused severe damage to the defendant's head and neck.

3.     Subsequent to this accident the defendant was having difficulty with his communication skills and the ability to focus his thoughts and attention.

4.     On the many occasions that I have had to communicate with the defendant prior to and subsequent to this serious accident leaves me to believe that the defendant to this very day, shows the effect that accident has had on him.

5.     Prior to the defendant's January 4th, 1999 trial date I specifically informed his trial counsel, Mr. Frank Mondono of the defendant's inability to think properly and to articulate what little he could.

6.     On at least one occasion, either several weeks prior to the defendant's trial date or on the defendant's trial

Affidavit of Beverly Subenko
Page 2 of 2 Cont.

-2-

date the defendant's sister Laurie Subenko was present
and made privy to the conversation with the defendant's
trial counsel regarding the defendant's inability to
think properly.

7.      The defendant's trial counsel Mr. Mondono stated that
it was not important to the case that the defendant could
not think properly only that he could.  Meaning Mr.
Mondono.

8.      Mr. Mondono also stated that he was hired to do all
the thinking and that the defendant had little to add to
the case.


I, Beverly Subenko, under the pains and penalties of perjury
hereby state that the foregoing facts to be true and accurate
to the best of my knowledge, understanding and belief.

Signed under pain and penalty of perjury on this _i7__ day of
November, 2004.

                    _Beverly Subenko_
                    Beverly Subenko

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

CRIMINAL NO. <u>98760</u>

C O M M O N W E A L T H

V.

M I C H A E L   S U B E N K O

_____

AFFIDAVIT OF LAURIE SUBENKO
<u>IN SUPPORT OF DEFENDANT'S MOTION FOR NEW TRIAL</u>

I, Laurie Subenko, hereby depose and state the following facts in support of defendant's motion for new trial:

1.      I am the sister of the defendant, Michael Subenko and freely provide the following information.

2.      On October 10, 1996 my brother Michael Subenko ("Defendant") was involved in a serious motor vehicle accident which caused severe damage to the defendant's head and neck.

3.      It appeared to me that subsequent to this serious accident my brother was having difficulty thinking clearly.

4.      On at least one occasion that I can remember. Prior to the defendant's trial I was present when my mother had conversation with my brother's trial counsel relevent to my brother's difficulty in thinking and articulation difficulty.

5.      I recall his trial counsel telling us that he was hired to do all the thinking and that that the defendant would have little to say or add to the case. I believe I had even commented whether he was competent to stand trial.

Affidavit of Laurie Subenko
Page 2 of 2 Cont.

-2-

I, Laurie Subenko, under the pains and penalties of perjury hereby state that the foregoing facts to be true and accurate to the best of my knowledge, understaning and belief.

Signed under pain and penalty of perjury on this ___17___ day of November, 2004.

Laurie Subenko

85

to the other side's expert and his story or her story,
as the case may be, hiding in the eel grass, so to
speak, with their own expert and suddenly popping on the
opponent an expert.

If this were the other way around and you were
hearing about Sergeant whatever his name is -- Place or
Pace -- for the first time, I'm sure I would be hearing
loud screams of anguish, and quite properly so.

MR. MONDANO:  But it would have been addressed
in pre-trial proceedings.  This issue was not.  And
again, I don't fundamentally disagree with you, but I'm
asking your Honor, if you will, to read between the
lines in the sense of I would love to have my expert
sitting in the back of the courtroom while Sergeant
Place testifies.  I won't even begin to propose that
because we can't afford that.  So, in other words,
resources are an issue here and I'm not the Commonwealth
of Massachusetts.  We're not the bottomless pit.  So, in
other words, I have limitations within which I need to
work.  I did not come in here anticipating that I'd be
sandbagging somebody on the issue of experts.  And
again, I don't know that I'm afoul of anything.

THE COURT:  If you'll forgive me for saying
so, the sandbagging is on your side, not theirs --

Beth Israel Hospital
Orthopedic Surgery
Clinic Note

Michael Subenko
BI# 1201534
April 10, 1997

Diagnosis:  Odontoid Type II fracture

History:  This is an interim dictation to document a phone
conversation.  I received a message to call the patient's
sister-in-law, Julie Attardo, at 356-4596, regarding his
transfer to the Plymouth County Correctional Facility from
Shattuck as well as "other issues".

She initially wanted to make sure that I was aware that he
had been transferred and I told her that I had been aware,
due to receiving numerous pages from the Plymouth County
Correctional Facility without receiving any identified pager
until eventually finding that they were just wondering when
he needed to be seen again or making his follow-up
appointment.  Michael's sister-in-law, Julie, is concerned
that he should be back at the Shattuck in a medical facility
rather than in a jail.  I described that this decision was
not up to me and that I was making recommendations regarding
his cervical spine.

I discussed with her that he was supposed to be wearing his
collar at all times and that I was under the impression that
he had taken it off and was refusing to wear it at any time.
This began at the Shattuck and has continued at the Plymouth
Correctional Facility.  The last time I spoke with someone
there, apparently he was reasonably comfortable with his
collar off.

We discussed the fact that if his cervical spine is
unstable, as documented by his flexion/extension views, on
his next visit that he may need to have an operation which
may or may not require an additional three months in a halo.
Again, I discussed with her as I had previously with the
folks at Shattuck that removal of the collar may entail
serious complications such as permanent paralysis, numbness,
and death.

The other issues that Julie brought up were regarding his
care both at the Shattuck and at the Plymouth, regarding
both medications and a recent infection.  Regarding the

Michael Subenko
April 10, 1997
Page 2

former, she was concerned that he was being placed on the
medication such as Ambien at 6:00 at night so that he would
be quiet and nobody would have to listen to him.  She has
discussed this medication at a hospital where she works (she
is a student nurse) and is under the impression that this is
inappropriate treatment.  Also, she is concerned about his
use of long-term narcotics including his Fentanyl patch.  I
discussed with her that I was unable to comment on the
treatment at the Shattuck since I was not involved and did
not know the details.  Regarding his chronic narcotic use, I
repeated to her that it is in his best interest to get off
narcotics as soon as possible.  The other issue was
regarding the recent infection.  Apparently she describes
seeing him one time while visiting and his face was so
swollen that his nose appeared out of line or out of joint.
The facial swelling was centered over one of his pins.  I
described to her my conversation with the Shattuck physician
regarding the pin site infection.  As it was described to
me, Michael had some swelling and an x-ray which showed
lucency around the pin site.  To this I had responded that
the patient, if he had a pin site infection, needed to have
the pin site changed, not to be treated with antibiotics.
However, he was never sent to the emergency room and was
treated with antibiotics instead.  When he was seen at his
last visit and the halo was removed, the pin sites were all
clean and dry without evidence of infection externally.

Apparently, Michael is going to be seen this coming Monday
on April 14, 1997.  With his next visit, we will obtain
flexion/extension views and assess the stability of his
spine.

Catherine Burns, M.D.

T /cm#4148319

01/06/04                COMMONWEALTH OF MASSACHUSETTS                    Page 3
                              APPEALS COURT

                              1999-P-1404

                   COMMONWEALTH vs. MICHAEL A. SUBENKO


                      * * *   D O C K E T   * * *
------------------------------------------------------------------------
PAPER DATE      ENTRY
------ --------  --------------------------------------------------------
       09/24/99 RE#4 Atty Frank Mondano is granted leave to withdraw. CPCS is
                appointed and is to assign appellate counsel. Brief and
                appendix due 1/22/2000. No further enlargement. (Jacobs, J.)
                *Notice.

  7.0  09/24/99 Notice: CPCS to assign counsel for Michael A. Subenko.
                Assignment #C2913902-5. (Jacobs, J.) *Notice

       09/24/99 RE#5 See action this date on paper #4. (Jacobs, J.) *Notice..

       09/24/99 RE#6 Allowed. (Jacobs, J.) *Notice.

  8.0  10/15/99 Letter of C.P.C.S. re assignment of Atty Petersen as counsel
                for Michael A. Subenko.

  9.0  10/27/99 Notice of appearance of Atty Petersen for Michael A. Subenko.

 10.0  01/19/00 MOTION to extend brief & appendix due date, filed by Michael A.
                Subenko.

       01/19/00 RE#10: Extension to 05/22/2000 granted for filing of brief of
                Michael A. Subenko, Defendant/Appellant. No further
                enlargements. Notice to Counsel.

 11.0  05/19/00 MOTION to extend brief & appendix due date, filed by Michael A.
                Subenko.

       05/23/00 RE#11: Extension to 06/22/2000 granted for filing of brief of
                Michael A. Subenko, Defendant/Appellant. No further
                enlargements. Counsel should seriously consider whether, given
                the health concerns described herein, she can continue
                representing the defendant whose appeal has been pending in
                this court since 8/99. (Lenk, J.) *Notice.

 12.0  06/22/00 SERVICE of brief & appendix for Defendant/Appellant Michael A.
                Subenko.

 13.0  07/14/00 Notice of appearance of ADA McKenna for Commonwealth.

 14.0  07/18/00 MOTION to extend brief due date of Commonwealth.

       07/18/00 RE#14: Extension to 11/21/2000 granted for filing of brief of
                Commonwealth, Plaintiff/Appellee. Notice to counsel.

 15.0  11/21/00 SERVICE of brief for Plaintiff/Appellee Commonwealth.

 16.0  12/04/00 MOTION to extend reply brief due date, filed by Michael A.
                Subenko.

to delay a correction clearly called for.  The judgment on the
vehicular homicide conviction shall be reversed and the
indictment dismissed in this appeal.

    4.  The manslaughter instruction.  The defendant challenges
the manslaughter instruction as flawed.  He contends the judge
incorrectly told the jury that "reckless" and "wanton" were
"identical" and "co-equal."  Review of the transcript reveals
that is plainly not so, and the judge never used these phrases in
the instructions.  The quotations in the defendant's brief are
lifted from the charging conference and not from the jury charge
as delivered.  In the actual jury instructions, the judge
expressly included a distinction between the terms "reckless" and
"wanton."  Indeed, the judge's instructions conformed closely to
those approved in Commonwealth v. Welansky, 316 Mass. 383, 398
(1944).[8]  There was no error.  See n.6, supra.

    5.  Other bad act evidence.  Over the defendant's objection,
the judge permitted evidence concerning an incident that occurred
approximately six weeks prior to the events in this case, in
which the defendant, driving a stolen Volvo, sped away from a
police officer at excessive speed, and crashed into another

---

[8]  The judge's instructions concerning the difference between
wanton and reckless is taken virtually verbatim from Welansky,
316 Mass. at 398:  "What does wanton or reckless conduct mean?
Our Supreme Judicial Court has stated that these two words are
practically synonymous, although the word wanton may contain a
suggestion of arrogance or insolence or heartlessness that is
lacking in the word reckless" (emphasis supplied).

9

# PETERSEN & SUCHECKI

*Attorneys at Law*
*44 School Street*
*Sixth Floor*
*Boston, Massachusetts 02108*
*(617)-367-3200*

*Jennifer Petersen, Esquire*                                    *Karl R. D. Suchecki, Esquire*

July 2, 2002

Mr. Michael A. Subenko
W65867
Souza Baranowski Correctional Facility
Post Office Box 1218
Shirley, Massachusetts 01464

     Re:  <u>Commonwealth v. Subenko</u> - 1999-P-1404

Dear Michael:

     I am sorry to have to report that the Supreme Judicial Court has denied our Application for Further Appellate Review.  I have enclosed a copy of the docket entry for your files.  Based upon the research I have conducted, it is my opinion that any attempt to pursue further the issues raised in the above-referenced case would be futile.

     Consequently, inasmuch as there are no further viable avenues of appeal, this concludes my representation.  If I can be of advice or assistance in the future, please do not hesitate to call.  Also, if circumstances change and a Rule 30 Motion for New Trial becomes ripe, feel free to have future counsel contact me.

     It has been a great pleasure working with you, and I wish you all the best.

                     Very truly yours,

                     Jennifer Petersen, Esquire

Enclosure

# PETERSEN & SUCHECKI

*Attorneys at Law*
*44 School St*
*Sixth Floor*
*Boston, Massachusetts 02108*
*(617)-367-3200*

---

*Jennifer Petersen, Esquire*                    *Karl R. D. Suchecki, Esquire*

February 13, 2004

Mr. Michael A. Subenko
W65867
MCI Norfolk, SMU Cell 332
Post Office Box 43
Norfolk, Massachusetts 02056-0043

Re: <u>Commonwealth v. Subenko</u> - 1999-P-1404

Dear Michael:

I am in receipt of your correspondence dated January 31 and postmarked February 3, 2004. I was somewhat surprised by its tone and content, especially in light of our prior, amiable relationship and the pleasant conversation we had about two weeks ago. A careful review of the letter makes it clear that, while you may have signed the document, you did not draft it. (This is evidenced by, <u>e.g.</u>, the fact your name is misspelled.) Despite this, let me address the points which are raised in the letter.

1. <u>With respect to the possibility of your filing a Rule 30 Motion, as we have discussed several times, I believe you may have good grounds to do so.</u> The two issues I recall having talked about raising include: 1) the possibility that the police threatened your then-girlfriend and her mother on the eve of trial in order to dissuade your girlfriend from testifying on your behalf, and 2) the statements you claim were made by a tow truck driver regarding marks allegedly made by a police cruiser on the vehicle you were driving, which marks might evidence the fact the police pushed the vehicle into oncoming traffic. At the time I closed the case involving your direct appeal and application for further review, you indicated that you wanted to wait to file a Rule 30 Motion because you hoped to reestablish contact with your girlfriend and that she would recant her testimony that she was not threatened into not testifying on your behalf. My position was and is the same: if either or both of these issues is ripe or becomes ripe, I would recommend that you be appointed counsel to assist you in pursuing them.

Mr. Michael A. Subenko
February 13, 2004
Page 2 of 2

2.    I am unaware that your competency has ever been at issue in this case.

3.    I agree that you <u>initially requested</u> that we raise the issue of <u>Attorney Mondano's</u> alleged <u>ineffective assistance</u> at trial but, as I told you at that time, in <u>my opinion</u> the record did not reflect that he provided you with less than what is required by the legal standard of an "ordinary fallible lawyer."  Assuming there was ineffective assistance of counsel which is not reflected in the appellate record, the issue is something that may be able to be addressed in a Rule 30 motion.

4.    I am unsure what this point regarding "prejudice" and "conflict of interest" refers to (except, perhaps, for my alleged failure to claim that Attorney Mondano's representation of you was ineffective).  Regardless, as I stated above, my recommendation to Attorney Nathanson would be that, if any of the issues we discussed become ripe, you should be appointed counsel for purposes of a Rule 30 Motion for New Trial.

5.    As you know, we did not meet because I was in my last trimester of pregnancy at the time I was briefing your case.  We were in contact - via telephone and mail - and at that time you agreed to waive the in-person meeting.

6.    With respect to your assertion that I am "covering up" Attorney Mondano's ineffective assistance at trial, this is simply a baseless accusation which does not warrant discussion.

Finally, as you know (and as we discussed roughly two weeks ago), I have been appointed to represent you on your upcoming Sentence Appeal this May.  When we last spoke, you did not reveal any dissatisfaction with my previous representation of you or the fact I had been reassigned to you.  Your recent correspondence, however, seems to indicate that you are/were unhappy with my representation, despite the fact I managed to get your vehicular homicide conviction overturned and the indictment against you dismissed.  <u>If you do not want me to continue to represent you, please let me know in writing at your earliest convenience. Assuming that is the case, it is imperative that new counsel be appointed immediately in order that he or she has time to prepare your sentence appeal which is scheduled to be heard in May.</u>

Very truly yours,

Jennifer Petersen, Esquire

# PETERSEN & SUCHECKI

*Attorneys at Law*
*44 School St*
*Sixth Floor*
*Boston, Massachusetts 02108*
*(617)-367-3200*

*Jennifer Petersen, Esquire*                                     *Karl R. D. Suchecki, Esquire*

June 23, 2000

Mr. Michael A. Subenko
W65867
Souza Baranowski Correctional Facility
Post Office Box 1218
Shirley, Massachusetts 01464

     Re:  <u>Commonwealth v. Subenko</u> - 1999-P-1404

Dear Michael:

     As Karl told you when you called yesterday, June 22, the brief
in the above-referenced matter was filed with the Appeals Court
just prior to when the two of you spoke and in accordance with the
court's order to do so.  In fact, during our conversation on June
14, I indicated to you that we would be filing it at that time and
no further extensions would be granted.  Despite the fact you knew
that, however, Karl said that you were somewhat <u>disappointed</u> the
brief actually had been filed because you still had hoped to
participate in researching and writing it.

     While I am sorry you may be a bit <u>disappointed</u>, I did send you
a copy of the complete six-volume set of your trial transcripts in
January, and you and I have talked several times since then about
how you could go about participating in the appellate process.  I
suggested that, after you reviewed the transcripts, you write to me
and fully set forth any particular issues, portions of the
transcript, or other related matters that were of concern to you.
While you were certainly under no obligation to do so, let alone in
any particular time frame, you were well aware that the brief was
originally due on May 19, yet you opted not to do any issue-
spotting, researching, or writing prior to that time.  Moreover,
you chose not to do so even after another one-month enlargement of
time was sought and granted until June 22.

     Since the Appeals Court will not allow an unlimited number of
enlargements of time to file your brief, I had little choice but to
file it yesterday.  At this point if you would still like to
participate there will be another opportunity to do so: after I
receive the Commonwealth's brief (which I anticipate doing in
roughly one to two months from now), I will send you a copy at my
earliest convenience.  Assuming you would like to, please read the

Mr. Michael A. Subenko
June 23, 2000
Page 2 of 2

that brief and then write to me regarding any issues therein which you feel need to be addressed in a reply brief. Please keep in mind that I am allowed only two weeks from the date I receive the brief to respond with a reply brief if one is deemed to be necessary. Consequently, if you want to participate in the decision of whether to file a reply brief and what should comprise its content, it is imperative that you do not delay in contacting me.

On a different note, it was a pleasure speaking with both you and your mother early last week. I was very sorry to hear of your injuries. I assume since you did not call me as arranged last Friday that you were released from being held in the infirmary and placed back into the general prison population as you wished. Please take care of yourself. I hope your cuts are healing nicely and that you are feeling better.

Very truly yours,

Jennifer Petersen, Esquire

03/10/95   09:10   ☎508 /9 5452        M.M.H.A.                                ☎002



# METROWEST MENTAL HEALTH ASSOCIATION, INC.

## 88 LINCOLN STREET, FRAMINGHAM, MA 01701-6386

### (508) 620-0010  FAX: (508) 879-5452

PSYCHOLOGICAL EVALUATION

NAME:              Michael Subenko        C.A.:   16.5

DATE OF BIRTH:     10-02-78               DATES TESTED:  03-06-95

EXAMINER:          Albert J. Cotugno      DATE OF REPORT: 03-10-95

LOCATION OF EVALUATION:  Old Colony Y, Brockton

REASON FOR REFERRAL:

Michael was referred for a psychological evaluation in order to assess current levels of functioning. He is currently being held at the Brockton Y pending appearance at Hingham District Court on multiple changes, including Breaking and Entering and Malicious Destruction of Property.

Materials accompanying this referral included: Court records, Phaneuf Center records, DYS records, Westwood Lodge and Pembroke Hospital admission and discharge summaries, and partial school records.

BACKGROUND INFORMATION:

Michael is a sixteen year five month old adolescent who is currently being held in DYS detention at the Brockton Y. He has been there since January 26, 1995, pending charges of Breaking and Entering and Malicious Destruction of Property. Michael has a long history of previous charges and involvement with the courts dating back to 1991.

Reportedly, at the age of 10, Michael was caught breaking and entering a neighbor's house, following which court-ordered outpatient psychotherapy was begun. Prior to his hospitalization at Pembroke Hospital in August of 1991, Michael had accumulated 5 charges of breaking and entering and theft. His parents reported at that time, that he "defies their rules, breaks curfew and frequently lies."

THIS AGENCY IS
SUPPORTED BY



Michael Subenko
Psychologial Eval.
Page 2


Michael was hospitalized at Pembroke for fourteen days in August of 1991 following a court referral and a request by his parents for evaluation of his antisocial behavior. He was discharged with an aftercare plan which included individual and family therapy.

At the age of 14, in March of 1993, Michael was again hospitalized at Westwood Lodge for 14 days, for problems described as "worsening behavior, truancy, failing grades, frequent fighting, school suspensions, legal problems, and substance abuse." Reportedly, his problems had escalated over the two years since his previous hospital admission, with legal infractions, school difficulties, and substance abuse. Michael was discharged home to his mother to continue outpatient psychotherapy, home tutoring, and behavioral management.

In August of 1993, Michael was committed to DYS from the Quincy Court, following charges of Assault and Battery, Breaking and Entering, and other charges. Since 1991, Michael had appeared in court on numerous charges and apparently was unable to control his behavior. From August 5, 1993 through October 12, 1993, Michael was placed at the Diagnostic Treatment Unit at the Brockton Y. In the spring of 1994, he was placed in Stephen French Forestry Program and discharged to Outreach and Tracking on June 10, 1994. Following "his disregard for O/T rules, he was placed on AWOL status on August 1, 1994 and terminated from this program on that date."

On August 12, 1994, Michael entered the Phaneuf Center where he remained until his discharge on December 12, 1994. During his attendance there, he participated in both individual and group counseling, and NA/AA groups. He was described as being "easily influenced by negativity."

Michael's family history has been characterized as chaotic. Michael's father reportedly had been physically abusive to his mother and his parents divorced in 1980 when he was two years old. They reconciled when he was eight years old, but again separated a short time later. Michael's father has been reported to be alcoholic and he has failed to pay child support. Michael has two older siblings, a sister, age 22, and a brother, age 20, who also has a history of juvenile and adult legal involvement and substance abuse problems. The family has been involved with DSS beginning in July of 1991.

Michael is reportedly a healthy youth with no serious medical concerns. There are reports of several closed head trauma at an early age, but with no loss of consciousness reported. Subsequent neurological testing was negative.

☑ 004

Michael Subenko
Psychological Eval.
Page 3

Michael has been tested psychologically on at least two previous occasions and these are listed below. Specific reports should be consulted for more detailed information.

8-2-91  by Debra Horowski, Ph.D. (WISC-R FS IQ: 98; VIQ: 96; PIQ: 101)
8-8-91  by Nancy Ricks, Ed.D (Neuropsychological Evaluation)
2-9-93  by Dorothy Levy (WISC-III FSIQ:85; VIQ: 82; PIQ: 91)

TEST PROCEDURES USED:

Wechsler Intelligence Scale for Children-Third Edition (WISC-III)
Benton Visual Rentention Test - Revised
Bender Visual Motor Gestalt Test
Rorschach Inkblot Test
Thematic Apperception Test (TAT)
Sentence Completion Test (SCT)
Draw A Person (DAP)

BEHAVIOR DURING EXAMINATION:

Mike was seen for approximately three hours of testing and interviewing held in a single session. Throughout the testing and interviewing, he was cooperative and compliant, completing all tasks and items presented without hesitation or difficulty. Though initially anxious, he was able to manage this with questions to the examiner this diminished soon after as testing began. With verbal tasks, Mike appeared to work more slowly and to need additional response time, likely a function of previously documented receptive language processing problems.

Mike demonstrated no strange or unusual behaviors and his thinking appeared clear and free of distorted or disordered thought process. His mood and affect were appropriate to the situation and he appeared sufficiently motivated and interested in his performance.

Overall, Mike's behavior and performance were consistent and this evaluation is considered to be a valid estimate of his current functional skills and abilities. Mike was informed that information and data from this evaluation could not be kept confidential and that he had the right to refuse to answer any and all questions. He acknowledged understanding of this warning and agreed to proceed.

Michael Subenko
Psychological Eval.
Page 4

## TEST RESULTS

### INTELLECTUAL FUNCTIONING

Mike was administered the Wechsler Intelligence Scale for Children - Third Edition (WISC-III). Currently, he is functioning overall in the low average range of abilities with no significant or unusual discrepancy between verbal/language and perceptual/spatial abilities.

While subtest scores overall appeared consistent and without significant scatter, Mike did demonstrate significant strength on tasks requiring auditory memory. He was able to recall long series of digits in forward and backward sequence and he was able to perform basic arithmetic computations in his head without the aid of pencil and paper.

Michael also demonstrated some relative weaknesses in areas most related to academic learning. His fund of learned information and word knowledge are both borderline deficient, reflecting deficiencies in basic academic language skills.

Michael obtained the following scores on the WISC-II. Scaled scores from 9-11 are considered average, 12-13 high average, 7-8 low average, and 5-6 borderline.

| VERBAL SUBTESTS | SCALED SCORES | PERFORMANCE SUBTESTS | SCALED SCORE |
|---|---|---|---|
| Information | 6 | Picture Completion | 9 |
| Similarities | 8 | Coding | 9 |
| Arithmetic | 10 | Picture Arrangement | 7 |
| Vocabulary | 6 | Block Design | 10 |
| Comprehension | 7 | Object Assembly | 7 |
| Digit Span | 13 | Symbol Search | 7 |

Verbal IQ Score:          85 (Low Average Range)   16th percentile
Performance IQ Score:     90 (Average Range)       25th percentile
Full Scale IQ Score:      86 (Low Average Range)   18th percentile

Verbal Comprehension Index:          83    13th percentile
Perceptual Organization Index:       90    25th percentile
Freedom From Distractibility Index:  109   73rd percentile
Processing Speed Index:              91    27th percentile

Michael Subenko
Psychological Eval.
Page 5


Overall, these scores are consistent with previous testing completed in February of 1993 and indicate generally stable functioning over the past two years.

PERSONALITY FUNCTIONING

Mike was administered a variety of personality and projective procedures in order to assess current levels of emotional functioning. Overall, he appears as a quite emotionally constricted adolescent who has little access to his internal feeling and emotional states. On the one hand, he presents as a friendly, affable young man who talks quite openly about events that have lead up to his current situation. On the other hand, he has little awareness of the concerns of others fostered by his actions, he has difficulty understanding the concepts of responsibility and accountability for his actions, and he has little insight about how his behavior has impacted his past and will impact his future.

Though at times Mike has the capacity to relate effectively to others, this tends to be around concrete and superficial aspects of interactions. He appears hesitant to trust and to commit to relationships and is unwilling to invest a significant part of himself in relationships at this time. While he does not appear to purposely demean others, he does not hold others or himself in high regard and thus his interactions are often without a true sense of feeling or empathy.

For example, when presented with projective procedures which require the construction of images which emerge in response to affectively - provocative stimuli, Mike appeared quite perplexed and stymied. He appeared to struggle with the stimuli, but could not create imagery which reflected internal states. Those images or stories he did create were either conventional and typical responses or were very diffuse and obscure. Overall however, he was able to produce relatively little personality data given his level of intelligence. What was apparent was a high degree of emotional withdrawal and denial. This apparently allows him to avoid confronting his own behavior and actions and the accompanying responsibility.

Mike exhibits a generally poor sense of self, but often maintains such denial that he is not consistently impacted by this. He demonstrates no indications of depression or dysphoria, but also does not place significant value in strong interpersonal relationships.

Michael Subenko
Psychological Eval.
Page 7

Mike appears vulnerable and at high risk for continued substance use which he appears to employ as a means to remain isolated from his own emotional states, as a way to satisfy a variety of unmet internal needs, and as a way to manage his interpersonal difficulties.    While he would benefit from the substitution of more appropriate and adaptive strategies for survival, Mike is not aware of how to redirect his life at the present time. He appears to require significant external structure to chart and stay on an appropriate behavioral course.

RECOMMENDATIONS

1. Intensive milieu treatment which provides structure, consistency, and appropriate behavioral expectations.

2. Group psychotherapy which allows Mike to practice relying on others, getting feedback on his behavior from peers, and beginning to explore his interpersonal needs.

3. Structured individual psychotherapy which focuses on the setting on manageable personal goals, the taking of responsibility for his own behavior, and the development self-control strategies.

4. Regular AA/NA or other substance abuse awareness meetings to understand and reduce his reliance on substance use as a means to manage and deal with stress.

5. Appropriate educational placement with the necessary special needs services to be assessed and implemented.

6. Vocational assessment so as to construct a vocational training program, including career counseling and planning.

7. Ongoing monitoring and supervision of educational, therapeutic, and substance usage interventions.

If you have any questions or require clarification regarding this report, please do not hesitate to contact me at 508-824-1484.

Albert J. Cotugno, Ph.D.
Licensed Psychologist

AJC/ah

cc: Craig Barger, Assistant Director, Southeast Region